IN THE UNITED STATES DISTRICT COURT
FOR PUERTO RICO

| | | |
|---|---|---|
| ANTHONY TERRAZAS and<br>CHASSITY TERRAZAS,<br>　　　　Plaintiffs,<br><br>v.<br><br>OLEIN RECOVERY CORPORATION,<br>INSURANCE COMPANIES ABC<br>　　　　Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE #: 22-1349<br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs, ANTHONY TERRAZAS and CHASSITY TERRAZAS file this Complaint complaining of and against Defendant, OLEIN RECOVERY CORPORATION, and for cause of action would show the Court the following:

### Nature of the Case

1. When inspecting a tractor-trailer in La Porte, Texas, in the course of his duties as a Texas Department of Public Safety Trooper, Plaintiff Anthony Terrazas was exposed to, and affected by toxic substances. This hazardous waste being transported in the tractor-trailer was generated and characterized by Defendant. Plaintiff's exposure to toxic substances caused him to suffer severe personal injuries, for which he now brings suit.

2. A lawsuit was initially filed against Defendant in the United States District Court for the Southern District of Texas. Both parties agreed to a dismissal without prejudice and that the case be refiled in United State District Court for Puerto Rico. Counsel for Defendant has agreed that statute of limitations will not be raised as an affirmative defense.

### Jurisdiction and Venue

3. Jurisdiction is based on diversity of citizenship between Plaintiffs and Defendant, and the matter in controversy, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000.00). 28 U.S.C. § 1332.

4.       The acts, omissions, negligence, and breaches of duty which give rise to this action occurred and were committed in the Puerto Rico, and venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**Parties**

5.       Plaintiff Anthony Terrazas is a resident of Houston, Harris County, Texas.

6.       Plaintiff Chassity Terrazas is a resident of Houston, Harris County, Texas.

7.       Olein Recovery Corporation is a petroleum lubricating oil and grease manufacturer, transporter, carrier and/or disposer. It is a domestic corporation with its principal place of business located at Carr. 901 KM 2.7, Bo. Camino Nuevo, Yabucoa, Puerto Rico 00767. Olein Recovery Corporation conducts business throughout the United States, including the State of Texas, and can be served through its registered agent for service of process, Jorge Gonzalez, at the same address.

8.       Upon information and belief, fictitiously named Defendants, Insurance Companies A, B, and C were and still are insurance companies doing business under the laws of the Commonwealth of Puerto Rico, who had issued and maintained in full force and effect, at the time of the injuries and damages alleged herein, polices of insurance issued to all Defendants, covering all risk for injuries and accidents that Plaintiff suffered as a result of their negligence.

**Facts**

9.       Texas Department of Public Safety Trooper Anthony Terrazas was born and raised in El Paso, Texas. He joined the Air Force after graduating high school and served honorably for more than six years. After being honorably discharged, he applied for and entered the Texas Department of Public Safety's Trainee School. He graduated in 2016 and began his work as "Trooper Terrazas."  Through continuing education, he received additional training in Commercial Vehicle Enforcement. He has been married for seven years and has two children. He has lived in and served Harris County since December 2016.

10. On July 24th, 2020, Trooper Terrazas was performing routine motor carrier enforcement on State Highway (SH) 225 and SH 146 in La Porte Texas. Part of Trooper Terrazas's duties included inspecting tractor-trailers transporting hazardous waste to ensure that said hazardous waste was being transported safely and in conformance with federal regulations.

11. Trooper Terrazas observed a tractor-tractor pulling a freight container displaying various placards indicating that it contained hazardous waste.  He pulled it over.

12. The tractor-trailer was transporting or carrying hazardous waste generated in Puerto Rico by Olein Recovery Corporation. This hazardous waste was in route to an incineration facility located in Arkansas.

13. Trooper Terrazas advised the driver of the vehicle that he would be conducting a hazardous materials inspection on the tractor-trailer and its contents. This inspection would take place at the La Porte Commercial Vehicle Enforcement pad. Trooper Terrazas advised the driver to follow him to said pad.

14. This hazardous waste inspection includes inspecting the tractor-trailer's shipping papers, placards, labels, containers, and load to insure compliance with federal regulations.

15. After arriving at the pad, Trooper Terrazas inspected the shipping papers related to the hazardous materials. Trooper Terrazas then advised the driver that he needed to open the freight container to inspect its load. Trooper Terrazas walked to the back of the container, broke the seal on its door, and had the container doors opened.

16. Immediately upon opening the doors, Trooper Terrazas and the driver detected a strong odor. Terrazas became lightheaded and felt a tightness in his chest. After pausing to reorientate himself, Trooper Terrazas stepped up onto the doorway opening and looked into the container. The continued odor made clear that there was a hazardous material leak or release inside the container.

17. Trooper Terrazas informed his onsite colleagues and his supervisor of the hazardous material leak or release. La Porte Fire Department was called to the scene and did an inspection on the vehicle. The fire department confirmed that there was a hazardous material leak or release from inside the container.

18. The decision was made for the tractor-trailer to be transported to a nearby secured location for further inspection and remediation where a leak was confirmed.

19. After ensuring that tractor-trailer was at the secured location, Trooper Terrazas continued to have lightheadedness, disorientation, and problems breathing. He was directed to immediately go to the emergency room at Memorial Hermann Southwest. He was released eight hours later after undergoing decontamination.

20. Trooper Terrazas woke up the next day, hoping to return to duty. Despite having ongoing symptoms, he went to a COVID-19 test site to work. At the test site, his symptoms worsened. He began coughing up blood, lost his voice, and discovered a bump on his arm. He went to Physicians Premier Emergency Room of Clear Lake for further treatment and evaluation.

21. Trooper Terrazas has not returned to work since July 25, 2020. He has been diagnosed with serious pulmonary and neurological injuries. His prognosis remains uncertain.

22. Plaintiff Chassity Terrazas is Trooper Terrazas's wife. Their marriage has been severely stressed and damaged by Trooper Terrazas's injuries.

**Claim for Relief I**
**(Negligence)**

23. Plaintiffs hereby incorporate by reference all preceding allegations of the Complaint as if fully set forth herein.

24. Defendant Olein Recovery Corporation had a duty to exercise ordinary care in the generating and characterizing hazardous material and/or the chemical substance inside the freight

container in a reasonable, safe, and prudent manner. Defendant breached that duty in one or more of the following respects:

      a.    Failing to warn persons who they knew would come into contact with the hazardous waste about the potential dangers of the waste and the actions that should be taken therewith;

      b.    Failing to hire, supervisor, train and/or retain adequate and/or reasonably competent personnel to characterize and make safe the hazardous waste in the freight container;

      c.    Failing to follow, enforce, and/or adhere to the requirements made by local, state, and/or federal governmental agencies with regard to the characterization of hazardous waste;

      d.    Failing to properly pack and stow the hazardous waste for transportation in compliance with state and/or federal regulations, including without limitation 49 CFR Part 173;

      e.    Failing to properly characterize the hazardous waste; and/or

      f.    Other acts of negligence, incompetence, and/or omissions, which may be proved by the evidence at trial.

## Claim for Relief II
**(Negligence Per Se)**

25.    Plaintiff hereby incorporates by reference all preceding allegations of the Complaint as if fully set forth herein.

26.    Defendant, as generator, violated numerous federal statutes and/or regulations. These include violations of the Federal Motor Carrier Safety Regulations (FMCSR) that specifically addresses the obligations of transporters or carriers of hazardous substances, and provisions of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.*, that specifically addresses the obligations of generators of hazardous waste. Specific violations include violations of 49 CFR § 171.1, § 171.2, § 173.24, and § 177.841, and 40 CFR § 262.11. These include, but are not limited to the, the specific sections:

49 CFR § 171.2(e); (i)

>(e) No person[1] may offer or accept a hazardous material for transportation in commerce unless the hazardous material is properly classed, described, packaged, marked, labeled, and in condition for shipment as required or authorized by applicable requirements of this subchapter or an exemption or special permit, approval, or registration issued under this subchapter or subchapter A of this chapter.
>
>…
>
>(i) No person may *certify* that a hazardous material is offered for transportation in commerce in accordance with the requirements of this subchapter unless the hazardous material is properly classed, described, packaged, marked, labeled, and in condition for shipment as required or authorized by applicable requirements of this subchapter or an exemption or special permit, approval, or registration issued under this subchapter or subchapter A of this chapter. Each person who offers a package containing a hazardous material for transportation in commerce in accordance with the requirements of this subchapter or an exemption or special permit, approval, or registration issued under this subchapter or subchapter A of this chapter, *must assure* that the package remains in condition for shipment until it is in the possession of the carrier.

40 CFR § 262.11 (a); (f)

A person who generates a solid waste, as defined in 40 CFR 261.2, must make an accurate determination as to whether that waste is a hazardous waste in order to ensure wastes are properly managed according to applicable RCRA regulations. A hazardous waste determination is made using the following steps:

>(a) The hazardous waste determination for each solid waste must be made at the point of waste generation, before any dilution, mixing, or other alteration of the waste occurs, and at any time in the course of its management that it has, or may have, changed its properties as a result of exposure to the environment or other factors that may change the properties of the waste such that the RCRA classification of the waste may change.

---

[1] Person means an individual, firm, co-partnership, corporation, company, association, or joint-stock association (including any trustee, receiver, assignee, or similar representative); or a government or Indian tribe (or an agency or instrumentality of any government or Indian tribe) that transports a hazardous material to further a commercial enterprise or offers a hazardous material for transportation in commerce.  49 CFR § 107.1.

> (f) A small or large quantity generator must maintain records supporting its hazardous waste determinations, including records that identify whether a solid waste is a hazardous waste, as defined by 40 CFR § 261.3.  Records must be maintained for at least three years from the date that the waste was last sent to on-site or off-site treatment, storage, or disposal.  These records must comprise the generator's knowledge of the waste and support the generator's determination, as described at paragraphs (c) and (d) of this section. The records must include, but are not limited to, the following types of information: The results of any tests, sampling, waste analyses, or other determinations made in accordance with this section; records documenting the tests, sampling, and analytical methods used to demonstrate the validity and relevance of such tests; records consulted in order to determine the process by which the waste was generated, the composition of the waste, and the properties of the waste; and records which explain the knowledge basis for the generator's determination, as described at paragraph (d)(1) of this section. The periods of record retention referred to in this section are extended automatically during the course of any unresolved enforcement action regarding the regulated activity or as requested by the Administrator.

27. Plaintiffs are within the class of persons which this ordinance was designed to protect.  Defendant's actions in failing to adhere to the above statute or regulations proximately caused Plaintiffs to suffer severe damages.

### Claim for Relief III
### (Loss of Consortium)

28. Plaintiff Chassity Terrazas seeks compensation for her loss of household services and loss of consortium resulting from the injuries to her husband.

### Claim for Relief IV
### (Direct Action)

29. Under Puerto Rico's Direct-Action Statute, the insurer issuing a policy insuring any person against loss or damage through legal liability for bodily injury and damages to a third party, shall become liable whenever a loss covered by the policy occurs.  26 P.R. Laws Ann. § 2001.

30. Insurance Companies ABC are liable for the damages herein demanded pursuant to the insurance policies issued for the benefit of Olein Recovery Corp.

## Damages

28. Plaintiffs sue to recover all elements of compensable damages under Puerto Rico law. Additionally, he seeks appropriate prejudgment interest thereon, as provided by law.

29. If the evidence at trial demonstrates the level of culpability necessary for an assessment of punitive or exemplary damages, then Plaintiffs seeks an award in such amount as the Jury shall deem appropriate.

## Jury Demand

30. Plaintiffs invoke their constitutional right to trial by jury.

## Prayer for Relief

WHEREFORE, Plaintiffs pray that Defendant be cited to appear and answer herein, and that upon the final trial of this case, a Final Judgment be entered by this Court in Plaintiffs' favor and against Defendant awarding such compensatory and punitive damages to Plaintiffs as are appropriate, plus interest and costs, and such other relief as is just and proper.

Respectfully submitted, this 21st day of July 21, 2022.

CASTAÑER & CÍA PSC

*/s/ Alberto J. Castañer-Padró*
Alberto J. Castañer-Padró
USDC 225706
MAI Center
Marginal Kennedy
771 Calle 1, Ste 204
San Juan PR 00920
Telephone: 787-707-0802
Facsimile: 1-888-227-5728
Email: alberto@castanerlaw.com

-9-

*Local Counsel for Plaintiffs*

Brian B. Winegar
Texas Bar No. 24081218
Earl Landers Vickery
Texas Bar No. 20571900
VICKERY & SHEPHERD, LLP
10000 Memorial Drive, Suite 750
Houston, TX  77024-3485
Telephone: 713-526-1100
Facsimile: 713-523-5939
Email: brian@justiceseekers.com
Email: lanny@justiceseekers.com
*Counsel for Plaintiffs*
Admittance *Pro Hac Vice* to be sought